# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

HKA GLOBAL, LLC,

Plaintiff,

v.

CHRISTOPHER BEIRISE, HANSELL
PASCO, TANNER COURRIER, AND
ACCURACY US, LLC,

Defendants.

C.A. No. 2024-0910-LWW

## MEMORANDUM OPINION

Date Submitted: October 27, 2025
Date Decided: December 16, 2025

Brian M. Rostocki, John T. Miraglia, REED SMITH LLP, Wilmington, Delaware; James N. Boudreau, Adam R. Roseman, REED SMITH LLP, Philadelphia, Pennsylvania; *Attorneys for Plaintiff HKA Global, LLC*

Paul D. Brown, Gregory E. Stuhlman, Dakota Eckenrode, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Melissa R. Chernofsky, CHIPMAN BROWN CICERO & COLE, LLP, New York, New York; *Attorneys for Defendants Christopher Beirise, Hansell Pasco, and Tanner Courrier*

John A. Sensing, Hannah L. Paxton, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Steven M. Zadravecz, Cary D. Sullivan, JONES DAY, Irvine, California; Hannah Ohara, JONES DAY, San Diego, California; *Attorneys for Defendant Accuracy US, LLC*

**Will, Vice Chancellor**

The plaintiff contends that three of its former partners schemed to join a competitor. To stop them, it invokes a non-competition provision that purports to protect its entire corporate structure, including parents and subsidiaries for which the partners never worked. It also relies on a non-solicitation provision that prevents one partner from "encouraging" people to leave the plaintiff's employ.

Because these provisions are facially overbroad and unenforceable, the contract and tort claims based on them fail. An additional claim concerning a separate agreement belongs in England and is dismissed without prejudice. Partial judgment on the pleadings is therefore entered for the defendants.

## I.     BACKGROUND

The factual background is drawn from undisputed facts in the pleadings, documentary exhibits submitted by the parties, and matters subject to judicial notice.[1]

### A.     The 2019 Acquisition

Plaintiff HKA Global, LLC is a global consultancy firm providing risk mitigation, dispute resolution, and expert witness services.[2] Defendants Christopher

---

[1] *See* Verified Compl. (Dkt. 1) ("Compl."); Am. Answer to Verified Compl., Affirmative Defenses and Countercl. (Dkt. 103) ("Answer"). Exhibits to the Complaint are cited as "Compl. Ex. __."

[2] Compl. ¶ 19.

Beirise, Hansell Pasco, and Tanner Courrier (together, the "Partners") are former employees of HKA who previously worked for Kenrich.[3]

In July 2019, HKA acquired Kenrich under a Stock Purchase Agreement.[4] "As part of the acquisition," Beirise entered into an employment agreement with The Kenrich Group.[5] Attached to his employment agreement was a Confidentiality, Non-Competition and Non-Solicitation Agreement (called the Restrictive Covenant Agreement or "RCA"), which is governed by Delaware law.[6] Beirise executed the RCA on July 16, 2019 "as a condition [to his] continued work with The Kenrich Group and HKA[.]"[7]

The RCA imposes post-employment restrictions on Beirise. A non-competition provision prohibits him, for a period of 12 months after termination of his employment with HKA, from "directly or indirectly . . . engag[ing] in . . . or undertak[ing] any planning to engage in . . . any portion of the business" conducted by any parent or subsidiary of HKA within the United States.[8] A non-solicitation

---

[3] *Id.* ¶ 20. Beirise was a Kenrich partner; Courrier and Pasco were employees. Answer ¶ 20.

[4] Compl. ¶ 21.

[5] *Id.* ¶ 23; *see* Compl. Ex. 5 (Executive Employment Agreement).

[6] Compl. Ex. 4 (Confidentiality, Non-Competition and Non-Solicitation Agreement) ("RCA"); *id.* § 12.

[7] Compl. ¶ 25.

[8] RCA § 5.A; *see infra* note 41 and accompanying text.

provision prohibits Beirise, for twelve months post-employment, from "directly or indirectly . . . solicit[ing] or encourag[ing]" any employee to leave HKA or its affiliates.[9]  Beirise agreed in the RCA that these restrictions were reasonable in scope, duration, and geography and necessary to protect HKA's legitimate business interests.[10]

### B. The 2022 Investment Documents

In August 2022, the Partners purchased equity in HKA Group Holdings Limited, the parent of HKA.[11]  The purchase coincided with HKA's acquisition by private equity firm PAI Partners.[12]  In connection with their investments, the Partners executed a Nominee Deed dated August 9, 2022.[13]

The Nominee Deed includes its own set of restrictive covenants, including non-competition and employee non-solicitation provisions.[14]  The non-solicitation

---

[9] RCA § 5.E; *see infra* note 51 and accompanying text.

[10] RCA § 5.F.

[11] Compl. ¶ 2 n.1.

[12] *See* Press Release, HKA, PAI Partners Acquires HKA from Bridgeport Development Capital (Aug. 10, 2022), https://www.hka.com/pai-partners-acquires-hka-hka; Press Release, PAI Partners, PAI Partners Acquires HKA (Apr. 30, 2022), https://www.paipartners.com/mediaitem/pai-partners-acquires-hka-from-bridgepoint/ (announcing the planned acquisition).  I take judicial notice of the acquisition and its timing.  *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006) (stating that the court may "take judicial notice of matters that are not subject to reasonable dispute").

[13] Compl. Ex. 1 (Nominee Deed Among Mount Olympus Topco Limited, Ocorian Trustees (Jersey) Limited and the Participants) ("Nominee Deed"); *see also* Compl. Ex. 2.

[14] Nominee Deed § 1.2.

clause prohibits the Partners, for 18 months after their departure, from "offer[ing] employment to . . . or attempt[ing] to entice away" any senior employee from any "Group member."[15]  The Nominee Deed is governed by English law and contains a forum selection clause requiring disputes over its covenants to be resolved "exclusively in England."[16]

### C.    The 2024 Transition Services Agreement

On June 14, 2024, the Partners announced their planned resignation from HKA to join Accuracy US, LLC—a competitor of HKA.  To facilitate the Partners' transition and avoid disruption to clients, the parties entered into a Transition and Settlement Agreement (the "TSA") on August 6, 2024.[17]  In the TSA, which is governed by Delaware law, HKA agreed to partially release the Partners from certain non-competition covenants to allow them to work for Accuracy, subject to fee-sharing arrangements.[18]

Before and during the resignation process, the Partners allegedly sought to recruit HKA employees to join them at Accuracy.[19]  Yet in Section 8.1 of the TSA, the Partners represented that, as of the signing date, they were aware of no facts that

---

[15] *Id.* §§ 1.2., 1.2.3, sched. 4.

[16] Compl. ¶ 2 n.1.

[17] Compl. Ex. 3 (Transition and Settlement Agreement) ("TSA") § 19.1; *see* Compl. ¶ 4.

[18] Compl. ¶ 4.

[19] *Id.* ¶ 5.

"might reasonably be considered to amount to a breach by . . . the Partners of the Service Agreements or Investment Documents."[20]  The "Service Agreements" include the RCA, and the "Investment Documents" include the Nominee Deed.[21]

### D.   This Litigation

HKA filed its Verified Complaint on August 29, 2024 against the Partners and Accuracy.  It advances claims for breach of the RCA (Count I) against Beirise; breach of the TSA (Count II) against Accuracy and the Partners; tortious interference with contract (Count III) against Courrier, Pasco, and Accuracy; breach of fiduciary duty (Count IV) against the Partners; and unfair competition (Count V) against all defendants.[22]

On December 9, 2024, after expedited discovery, HKA moved for a preliminary injunction.[23]  The motion was denied on April 21, 2025.[24]  I held that HKA had not demonstrated a reasonable likelihood of success on the merits of its breach of contract and tortious interference claims.[25]  In doing so, I expressed that

---

[20] TSA § 8.1.

[21] *See infra* note 68.

[22] *See* Compl. ¶¶ 99-153.

[23] Dkt. 71.

[24] Dkts. 118-19.

[25] Dkt. 121 (hearing transcript) 18-21.

the restrictive covenants were likely overbroad and unenforceable.[26] Undeterred, HKA pressed forward, seeking additional discovery and a trial.

Now, the defendants move for partial judgment on the pleadings as to Counts I, III, and parts of Count II, arguing that the underlying restrictive covenants are unenforceable as a matter of law.[27] HKA opposes the motion.[28] The motion was submitted for decision on October 27, when the defendants filed their reply brief.[29]

## II. ANALYSIS

A motion for judgment on the pleadings under Court of Chancery Rule 12(c) may be granted "where there are no material issues of fact and the movant is entitled to judgment as a matter of law."[30] In resolving such a motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the

---

[26] *Id.*

[27] Defs.' Joint Opening Br. in Supp. of Mot. for Partial J. on the Pleadings (Dkt. 183) ("Defs.' Opening Br.") 2-3.

[28] Pl.'s Answering Br. in Opp'n to Defs.' Mot for Partial J. on the Pleadings (Dkt. 208) ("Pl.'s Opp'n Br."). HKA also asserts that the motion is premature because HKA has since filed a motion to amend the Complaint. *See id.* at 11-12. I previously rejected HKA's request that I take up their motion to amend before resolving the instant motion for partial judgment on the pleadings. *See* Order (Dkt. 210). The proposed amended complaint is not in the pleadings before me. And regardless of what HKA may plead in the future, it will not change the plain meaning of the RCA's unambiguous terms.

[29] Defs.' Reply in Supp. of Joint Mot. for Partial J. on the Pleadings (Dkt. 218). Oral argument was not requested and is unnecessary, particularly considering the extensive argument at the preliminary injunction stage.

[30] *NBC Universal, Inc. v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *4 (Del. Ch. Apr. 29, 2005); *see also* Ct. Ch. R. 12(c).

non-movant. The court need not accept conclusory allegations unsupported by specific facts or draw unreasonable inferences in the non-movant's favor.[31]

The defendants' motion turns on the interpretation of two contracts: the RCA and the TSA. "Judgment on the pleadings . . . is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact."[32] "When the contract is clear and unambiguous, [the court] will give effect to the plain-meaning of the contract's terms and provisions."[33]

## A. Enforceability of the RCA's Restrictive Covenants

In Count I of the Complaint, HKA Global claims that Beirise breached the non-competition and non-solicitation clauses in the RCA.[34] To enforce a restrictive covenant, the court must determine if it "[(1)] meets general contract law requirements, (2) is reasonable in scope and duration, (3) advances a legitimate economic interest of the party enforcing the covenant, and (4) survives a balance of

---

[31] *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000) (explaining that the court must not "blindly accept as true all allegations, nor must it draw all inferences from them in [the] plaintiffs' favor unless they are reasonable inferences" (quoting *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999))).

[32] *NBC Universal*, 2005 WL 1038997, at *5; *see also Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991) ("The proper interpretation of language in a contract, while analytically a question of fact, is treated as a question of law both in the trial court and on appeal." (citation omitted)).

[33] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010); *see also id.* at 1160 ("The determination of ambiguity lies within the sole province of the court.").

[34] Compl. ¶¶ 99-111.

7

the equities."[35] "When evaluating the reasonableness of a restrictive covenant, a court examines the restriction holistically and in context" and avoids "tick[ing] through individual features of a restriction in isolation, because features work together synergistically."[36] Where a defendant can show that "the provisions at issue are restrictive covenants that prohibit an employee from competing" and these provisions are "unreasonable and unenforceable," then he has shown his "entitle[ment] to judgment as a matter of law."[37]

Beirise argues that the restrictive covenants are facially overbroad and unenforceable as a matter of Delaware law.[38] In response, HKA contends that the covenants are reasonable and necessary to protect its legitimate business interests, particularly since the RCA was executed in connection with HKA's acquisition of Kenrich.[39] Neither the non-competition provision nor the non-solicitation of the RCA is enforceable.

To start, it is a stretch to say that the RCA was executed in the acquisition context. Beirise agreed to the restrictive covenants as part of his employment agreement, in consideration for his "employment and continued employment by

---

[35] *Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *19 (Del. Ch. July 22, 2015).

[36] *Sunder Energy, LLC v. Jackson*, 305 A.3d 723, 753 (Del. Ch. 2023) [hereinafter *Sunder I*], *aff'd in part, rev'd in part*, 332 A.3d 472 (Del. 2024) [hereinafter *Sunder II*].

[37] *Fortiline, Inc. v. McCall*, 341 A.3d 1027, 1035 (Del. Ch. 2025).

[38] Defs.' Opening Br. 10-17.

[39] Pl.'s Opp'n Br. 14-25.

8

[HKA]."[40] But even if the RCA could be viewed under the "less searching" scrutiny that applies in the sale of a business, the covenants are unreasonably overbroad and exceed HKA Global's legitimate economic interests.

### 1. The Non-Compete

The non-competition provision of the RCA states:

> During the term of Executive's employment and for a period of twelve (12) months following the termination of Executive's employment with the Employer, Executive shall not directly or indirectly, whether as owner, partner, investor, consultant, agent, employee, co-venturer or otherwise, engage in or compete with, or undertake any planning to engage in or compete with, ***all or any portion of the business carried out by any Group Company*** in the Geographic Area.[41]

A "Group Company" is defined as "the Company [i.e., The Kenrich Group, LLC and The Kenrich Group Holdings Corp.] ***or any of its direct or indirect parent or subsidiary entities***."[42] The "Geographic Area" is the United States.[43]

This definition is fatally overbroad and not tailored to the expert work Beirise performed as an employee of Kenrich and HKA. Instead, it includes "all or any portion of the business" carried out by *any* entity—from upstream parents to

---

[40] RCA § 5.F.

[41] *Id.* § 5.A (emphasis added).

[42] *Id.* § 1.C (defining "Group Company" as "the Company or any of its direct or indirect parent or subsidiary entities") (emphasis added); *id.* § 1.A (defining "Company" as "the Employer, together with its parent company, The Kenrich Group Holdings Corp."); *see also id.* at Preamble (defining "Employer" as "The Kenrich Group, LLC").

[43] *Id.* § 1.D (defining "Geographic Area" as the "United States of America").

9

downstream subsidiaries—in HKA's corporate structure. HKA is currently owned by PAI Partners, a private equity firm with investments in portfolio companies across sectors in dozens of countries.[44] By its terms, the definition of "Group Company" includes any company that PAI Partners invests in or acquires. The RCA thus purports to bar Beirise from competing with business lines he never managed, sold, or worked within, simply because those lines are operated by entities broadly affiliated with HKA.

A non-competition provision "will only be enforced to protect the legitimate economic interests of the employer."[45] Delaware courts have recognized legitimate interests to include "protection of employer goodwill and protection of employer confidential information from misuse."[46] "In the context of a sale of a business, the acquirer has a legitimate economic interest with regard to the assets and information it acquired in the sale."[47]

The fact that the definition facially covers Accuracy is irrelevant. HKA must defend the text of the covenant it imposed. Its attempt to protect the goodwill of its

---

[44] *See PAI Partners Acquires HKA from Bridgeport Development Capital*, HKA (Aug. 10, 2022), https://www.hka.com/pai-partners-acquires-hka-hka; *Investments*, PAI Partners, https://www.paipartners.com/investments/ (last visited Dec. 10, 2025) (describing investments in the "Business Services," "Food & Consumer," "Industrial Goods & Services," and "Healthcare" sectors).

[45] *Rsch. & Trading Corp. v Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992).

[46] *Id.*

[47] *Kodiak Bldg. P'rs, LLC v. Adams*, 2022 WL 5240507, at *8 (Del. Ch. Oct. 6, 2022).

10

entire "Group," rather than just the asset it purchased from Kenrich, disconnects the restriction from its legitimate purpose.[48] There is no legitimate economic interest that could justify HKA barring Beirise from working in the United States for one year in "any portion of the business" conducted within its corporate structure.[49]

HKA also insists that discovery is necessary to determine whether PAI Partners is a "parent" under the agreement. I disagree. The facial overbreadth stems from the inclusion of the phrase "any . . . direct or indirect parent or subsidiary," which creates a restriction that is not tailored to the goodwill HKA acquired from Kenrich. Whether PAI Partners falls within that definition does not remedy the structural defect that the covenant protects a corporate web broader than the specific business HKA acquired.[50]

---

[48] *See id.* at *11.

[49] RCA § 5.A; *see Fortiline, Inc. v. McCall*, 2024 WL 4088629, at *5 (Del. Ch. Sept. 5, 2024) (holding that a covenant restricting an employee from competing with any entity "under the same corporate umbrella" as their former employer, without any limitation on the type of work being of the same sort the employee actually performed, was overbroad); *see also Fortiline*, 341 A.3d at 1036 (granting summary judgment that restrictive covenants were unenforceable as a matter of law); *Kodiak*, 2022 WL 5240507, at *11 (holding that restrictive covenants were "overbroad and unenforceable" where the plaintiff "lack[ed] a legitimate economic interest to protect confidential information unrelated to truss and lumber operations that would justify restraining [the defendant's] employment" and the covenants "cover[ed] the entire Business and Company Group").

[50] *See Hub Gp., Inc. v. Knoll*, 2024 WL 3453863, at *8 (Del. Ch. July 18, 2024) (deeming a restrictive covenant overbroad where it would prohibit an employee from competing with "any entity that control[led]" the employer or its "subsidiaries"); *id.* at *9, *12 ("By its plain terms, the [restrictive covenant] purports to prevent Knoll from working for an entity

11

### 2. The Non-Solicit

The non-solicitation provision in the RCA states:

> During the term of Executive's employment and for a period of twelve (12) months following the termination of Executive's employment with the Employer, Executive shall not, ***directly or indirectly***, individually or on behalf of any other person or entity recruit, ***solicit or encourage any Group Company employee to leave the employ of any Group Company***. For purposes of this Section, a Group Company employee shall only mean any person who was employed by any Group Company within the ninety (90) days preceding the date on which Executive's employment terminated and about whose employment the Executive had actual knowledge.[51]

This covenant suffers from the same overbreadth in the definition of a "Group Company" that imperils the non-compete.[52] It fails for a second reason. The non-solicit is not limited to prohibiting Beirise from soliciting employees to join a competitor.[53] It also prohibits Beirise from "***encourag[ing]*** any Group Company employee to leave the employ of any Group Company."[54] This bar on "encouragement" is facially overbroad and unenforceable as a matter of law.

---

that competes with any of 25 Hub entities located in four countries . . . [Such a restriction was] so complex and difficult to parse that a broad range of conduct [was] prohibited.").

[51] RCA § 5.E (emphasis added).

[52] *See supra* note 42 and accompanying text.

[53] RCA § 5.E.

[54] *Id.* (emphasis added)

The Court of Chancery recently held that a ban on "encouraging" employees to leave is unenforceably overbroad because it captures non-competitive conduct.[55] Under the RCA's plain terms, Beirise would breach the contract by advising a colleague to leave HKA for health reasons, to retire, or to care for family.[56] It would be patently unreasonable to mandate that Beirise "refuse to discuss whether joining a non-profit would be more personally rewarding and aligned with that person's values."[57] The non-solicit therefore restricts speech and conduct unrelated to unfair competition and advances no legitimate business interest.

### 3. Blue Penciling

HKA requests that, if I deem the restrictive covenants unenforceable, I should exercise my discretion to revise (or "blue-pencil") them to contain reasonable terms. It insists that this is a sale-of-business context involving significant consideration, which supports blue-penciling.[58] But, even if that were true, Delaware courts generally refuse to blue-pencil facially overbroad restrictive covenants, particularly where the defect is structural rather than clerical.[59]

---

[55] *Sunder I*, 305 A.3d at 758-59 (explaining how a non-solicitation provision prohibited "encourag[ing] to leave the employ" of the employer).

[56] RCA § 5.E.

[57] *Sunder I*, 305 A.3d at 759.

[58] Pl.'s Opp'n Br. 29.

[59] *See, e.g.*, *Sunder I*, 305 A.3d at 753-54 (refusing to blue-pencil a restrictive covenant); *Payscale Inc. v. Norman*, 2025 WL 1622341, at *7 (Del. Ch. June 9, 2025) (same); *Weil Hldgs. II, LLC v. Alexander*, 2025 WL 689191, at *7 (Del. Ch. Mar. 4, 2025) (same);

13

HKA could have narrowed the non-competition provision to only cover "Services" of a "Group Company," but it did not. It could have narrowed the non-solicitation provision to only cover situations where Mr. Beirise recruited an employee to leave a "Group Company" and work for him at another entity that performs "Services," but it did not. Instead, HKA seeks to enforce a year-long, nationwide non-competition provision that covers "all or any portion" of any business carried out by any entity in HKA's corporate umbrella.[60] It also seeks to enforce a year-long non-solicitation provision that bars Beirise from "encourag[ing]" any employee of any entity in HKA's corporate umbrella from leaving their employment for any reason.[61]

Excising the "Group Company" definition or the word "encourage" would require me to draft a new agreement for the parties, which would involve an improper exercise of equitable discretion on these facts. Such blue penciling would support a "no-lose" scenario for HKA, allowing it to impose draconian restrictions with the belief that the court could simply scale them back if challenged. HKA, a

*Fortiline*, 2024 WL 4088629, at *5 n.46 (same); *Hub Gp.*, 2024 WL 345383, at *12 n.124 (same); *Intertek Testing Servs. NA, Inc. v. Eastman*, 2023 WL 2544236, at *5 (Del. Ch. Mar. 16, 2023) (same); *Kodiak*, 2022 WL 5240507, at *4 n.49 (same); *FP UC Hldgs., LLC v. Hamilton*, 2020 WL 1492783, at *8 (Del. Ch. Mar. 27, 2020) (same).

[60] RCA § 5.A.

[61] *Id.* § 5.E.

sophisticated party, chose to draft overbroad restrictions.  It must now live with the consequences of that choice.[62]

## B.    Tortious Interference

In Count III, HKA alleges that Accuracy, Courrier, and Pasco tortiously interfered with HKA's contractual relationship with Beirise—namely, with the RCA. A claim for tortious interference with contract requires: "(1) a contract, (2) about which defendant knew[,] and (3) an intentional act that is a significant factor in causing the breach of such contract[,] (4) without justification[,] (5) which causes injury."[63]

An underlying breach of contract is an essential element of the claim.[64] Because the restrictive covenants in the RCA are unenforceable under Delaware law, HKA cannot establish the existence of a valid contractual obligation with which the defendants could have interfered.  Absent an enforceable contract or a valid underlying breach, Count III fails as a matter of law.

---

[62] *See Sunder II*, 332 A.3d at 490 ("If employers know that even the most unreasonable covenants will be enforced if an employee's conduct is sufficiently flagrant, employers will be less incentivized to craft reasonable restrictions from the outset.").

[63] *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1266 (Del. 2004) (quoting *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987)).

[64] *See Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006) ("To state a tortious interference claim, a plaintiff must properly allege an underlying breach of contract.").

## C. The Investment Documents

In Count II, HKA alleges that Accuracy, Courrier, and Pasco breached the TSA.[65] The basis of HKA's claim is that the Partners violated the warranty in Section 8.1 of the TSA. In that provision, the Partners represented that, as of the signing date, they were aware of "no facts or circumstances [that] . . . might reasonably be considered to amount to a breach by . . . the Partners of the Service Agreements or Investment Documents."[66]

HKA asserts that this representation was false since the Partners had already solicited HKA employees to join Accuracy.[67] It maintains that the solicitation breached restrictive covenants in both the RCA (a "Service Agreement[]") and the Nominee Deed (an "Investment Document[]").[68]

The defendants move for judgment in their favor on this claim, arguing that because the underlying restrictive covenants are unenforceable, there was no valid

---

[65] HKA also alleges Accuracy breached the TSA by failing to notify HKA of employment offers. Compl. ¶ 121. This aspect of the claim is not dependent on the validity of the restrictive covenants and not at issue in the motion.

[66] TSA § 8.1.

[67] Pl.'s Opp'n Br. 6-7.

[68] *See* TSA § 1.1 (defining "Service Agreements" to include the "Employment Agreement, dated as of July 16, 2019, by and between Christopher Beirise and The Kenrich Group, LLC, together with that certain Confidentiality, Non-Competition and Non-Solicitation Agreement, dated as of July 16, 2019, by and among Christopher Beirise, The Kenrich Group, LLC and HKA Global Holdings"); *id.* (defining "HKA Investment documents" to include "that certain Nominee Deed, dated as of August 9, 2022, by and among Mount

legal obligation to breach. As such, they argue that the Partners' representation in Section 8.1 of the TSA was accurate. To resolve this argument, I must analyze the breach of warranty claim in two parts, corresponding to the underlying agreements the warranty covers. Neither portion succeeds.

1.     The RCA

To the extent Count II alleges a breach of the TSA based on violations of the RCA, the claim fails on the merits. As explained above, the restrictive covenants within the RCA are facially overbroad and unenforceable.[69] A void or unenforceable contract provision imposes no legal duty. Consequently, conduct that contravenes a void restrictive covenant cannot legally constitute a breach of that covenant.[70]

Because the underlying covenants were unenforceable at the time the TSA was signed, Beirise was not in breach of the RCA when he allegedly recruited HKA employees. The representation in Section 8.1 that no such breach existed was legally

---

Olympus Topco Limited, Ocorian Trustees (Jersey) Limited, and each of the Partners [Limited]").

[69] *See supra* Section II.A.

[70] *See Fortiline*, 341 A.3d at 1035 (holding that plaintiffs "are not entitled to any damages based on breaches of unenforceable restrictive covenants"); *Sunder I*, 305 A.3d at 746 (explaining that a plaintiff "cannot establish a reasonable likelihood of success on the merits" of a breach claim where there is no "valid contractual obligation").

accurate. HKA cannot advance a claim for breach of warranty premised on the violation of a nullity.

### 2. The Nominee Deed

To the extent Count II alleges a breach of the TSA based on violations of the Nominee Deed, the claim cannot be adjudicated in this forum. HKA acknowledges in its Complaint that the Nominee Deed "obligates the parties to seek enforcement of its covenants exclusively in England."[71] The Nominee Deed, as HKA points out in its brief, is currently "subject to separate proceedings in the United Kingdom."[72]

Yet HKA asks this court to determine whether the Partners breached the Nominee Deed as a predicate to finding a breach of the TSA warranty. In doing so, HKA invites the court to do indirectly what the forum selection clause prohibits it from doing directly. It asks that I first determine if the Partners' conduct constituted a breach of the Nominee Deed under English law—an adjudication HKA concedes belongs in the UK courts—to assess whether the TSA warranty was false.

HKA cannot use a Delaware breach of warranty claim to circumvent the mandatory foreign forum selection clause and litigate the substance of English

---

[71] Compl. ¶ 2 n.1.

[72] Pl.'s Opp'n Br. 29.

18

covenants. The proper forum for determining whether the Nominee Deed was breached is the one chosen by the parties to those documents.

## III. CONCLUSION

The defendants' motion for partial judgment on the pleadings is granted. Judgment is entered in favor of Beirise on Count I because the restrictive covenants in the RCA are unenforceable. Judgment is entered in favor of Accuracy, Courrier, and Pasco on Count III because there is no underlying breach of a valid contractual obligation. Judgment is likewise entered in favor of the defendants on Count II to the extent it is premised on the RCA. Count II is dismissed, in part, to the extent it is premised on the Nominee Deed, without prejudice to HKA's right to proceed in the proper English forum. The parties must confer on and submit an implementing order within five business days.